## DOWNER *et al.* v. FORD.

IN this case, which was ejectment for a lot purchased by plaintiffs of B., it was held, that defendant had so recognized the title of B. as to be estopped from now disputing it.

APPEAL from the Ninth District.

Ejectment for a lot in Oroville. The cause was tried by the Court, on consent of parties.

The evidence, as to the circumstances under which defendant took possession of the lot in dispute, was the testimony of Bird, as follows: "In June or July, 1855, defendant came to the town, and soon settled on the lot where he now lives. He had lived a little while on the 'Savage lot,' and did not like it. When he was building, I told him I was sorry, as Scott had selected it, in payment for surveying. Some time after that, defendant inclosed the lot, together with the one now in dispute. He told me he would give it up when my family came. Afterwards, he wanted to fence with boards, and we agreed he should fence both in, and I would pay him one-half the expenses. There

23

would not be much difference between fencing one or both the lots. My family did not come."

Cross-examination: " Huntoon had asked me if I had a corner lot that would suit a friend of his. I showed him the ' Savage lots,' and told him he could have both for one hundred and fifty dollars, or the corner one for one hundred dollars, and the other for fifty dollars; and he (defendant) went on them, and put up his camp, and soon not liking that, moved on this one, liking it on account of the shade tree. Defend-; ant did not consult me in regard to moving on the second lot, and went without my leave. He had been there perhaps a week, or several days, before I went to see him, or said anything to him about it. When I went to see him first, nothing was said by Ford about giving up the corner lot, as he was then living on the other." It seems the " Savage lots " were near the lot on which defendant built his house, and near the corner lot in dispute. Bird also testified that, although defendant " always said he would give up this corner lot when my family came, yet he never told me he would not give up the lot unless I brought my family."

It does not appear, otherwise than is stated above, or in the findings, that Huntoon was the agent of defendant. It was admitted defendant came to Oroville after Bird had surveyed and laid off the town.

The findings of the Court were as follows:

Downer & Garlow, in 1854, claimed about one hundred and sixty acres of land upon the public domain, including the site of Oroville, and during that and the following years, had a number of acres inclosed and under cultivation; the balance of the tract, embracing the lot in question, was partially inclosed, but not so as to prevent the free egress and ingress of stock. July 30th, 1855, they sold to Ralph Bird, by deed. Bird laid off the town of Oroville into blocks and lots, and, sub-sequently, defendant, with the consent of Bird, located, with his family, on one of the lots, and put up his camp; not liking the location, he removed in a little while, without the consent of Bird, on a lot next adjoining a corner lot—the one in dispute—and built a house. After-wards, defendant put a brush fence around the lot upon which he was living, as well as around the lot in dispute, including both lots under one inclosure. Bird designed the corner lot for a residence, and defend-ant informed him he would give it up when he, Bird, required it. Sub-sequently, Bird entered into an agreement with defendant, by which he was to put a board fence around the lots, the expenses to be shared

Downer *v.* Ford.

equally.    When defendant was putting the brush fence around the lot in dispute, he told Bird he was doing it to save it for him, and keep it from the jumpers; and when he was putting up the board fence, he told Bird he was fencing it for him.    At another time, defendant said to a third person, that he was holding the corner lot for Bird, until his family came, and that he did not believe Bird's family would ever come, and hence, he would keep or own it.    Subsequently, it was found that the deed from Downer & Garlow to Bird did not cover all the land intended to be conveyed, and in December, 1856, another deed was executed, so as to include what had been omitted in the first.    The lot in question was a part of the land omitted in the first deed, but, Bird having conveyed to plaintiffs before this second deed was made, this lot was excepted from its operation.    The Court below dismissed from its consideration the deeds from Downer & Garlow to Bird, as they did not cover the lot in dispute.    The lot was worth twenty-five dollars per month, and plaintiffs demanded possession before suit.    The Court below held, that the foregoing facts showed that defendant had repeatedly acknowledged the title of Bird, who had conveyed to plaintiffs, and therefore, that they were entitled to possession, with twenty-five dollars per month from the time of demand.    Judgment accordingly. Defendant appeals.

*Robinson, Beatty & Heacock,* for Appellant.

I. · The Court below bases its judgment on the sole ground that Ford, who entered on the lot in dispute " without the consent of Bird," was estopped from denying the title of plaintiffs, because he had " frequently acknowledged the title of Bird."

This is not law.    A tenant who *enters* under a landlord, cannot dispute his title.    But this rule does not apply to cases where a party already in possession acknowledges the title of one who has no title. If a party thus in possession acknowledges the title of another, by taking a lease, under seal, he may be estopped by his deed, unless he can relieve himself from the operation of the deed, by showing it was procured by fraud.    But a mere parol acknowledgment has no effect whatever on the rights of the party in possession, unless he has thereby · caused the claimant to forego some legal right by making such promise. (2 Smith's Leading Cases, 570, 4th Amer. Ed. and cases; *Hall* v. *Benner,* 1 Penn. 409; *Jackson* v. *Spear,* 7 Wend. 401; *Rogers* v. *Pitcher,* 6 Taunton, 577; *Claridge* v. *MacKinzee,* 4 Man. & Gran. 82.)

In the argument of this case, the Court suggested that the judgment of the Court might be sustained on the hypothesis that Ford *entered* on the lot as the mere agent of Bird; that Ford was not holding for himself, but merely for Bird.

To this, we answer that there is no such finding of fact. The Court, so far from finding that Ford entered as the agent of Bird, expressly finds that he entered "without the consent of Bird."

An examination of his (Bird's) testimony will show that, so far from acknowledging himself tenant of Bird, he only agreed to give up his possession to Bird on condition that Bird brought his family out. This condition was never complied with.

II.   The evidence does not sustain the finding, that Ford entered on the " Savage lots " by the consent of Bird.   There is no testimony showing that Ford authorized Huntoon to act for him.   The evidence of Bird, on this point, is hearsay, as to Ford.   Huntoon was not examined.

The statement which Ford made to Bird, that he was fencing it to save it from jumpers, was made to Bird after he had nearly, if not quite, finished his brush fence, and after he had been for several days quietly in possession.   The Court finds he entered "without the consent of Bird."   Having entered without the consent of Bird, when Bird had no deed for this land, and when neither Bird nor Downer & Garlow had ever been in possession, he acquired some right to the land—the land being, as the Court finds, public domain.   Ford, by the mere entry and occupancy, acquired a right of possession as against all the world, except the Government.   Having acquired an estate in the land, how could he divest himself of it by merely saying he would hold it for Bird, he would fence it for Bird, or it was Bird's ?

*Burt & Rhodes*, for Respondents.

I.   The entry of a tenant, or one holding, into the possession of a portion of a general tract of land, by consent, under lease, or with an agreement express, or implied, to purchase the same, is an acknowledgment of title in the landlord or owner of the entire tract; and the subsequent removal, without the knowledge or consent of the owner, to another portion of the same tract, is a fraud upon his rights, and can place the tenant in no superior condition to the one originally imposed by law.

II.   Ford took possession of the lot in controversy with the consent

and as the agent of Bird, held it as such, and repeatedly promised to deliver it up when required.

III.  By the whole evidence and findings, it is apparent that Ford was not in possession of the lot sued for, at the time that he made the first acknowledgments of Bird's title.  He was intercepted in the act, and permitted to go on only with the full understanding that the corner lot was not his, but Bird's, and that he should hold it after he perfected the inclosure for him.

But even admitting defendant was in full possession at the times he acknowledged Bird's title, still he is estopped now from denying that title.  (*Jackson ex dem. Colton* v. *Harper*, 5 Wend. 246; 3 Johns. 223, 499; 1 Greenl. Ev. sec. 109; *McKune* v. *Montgomery*, 9 Cal. 573.)

The appellant, however, contends that there is a material distinction between those cases where the defendant enters under the plaintiff, and those where defendant, being already in possession, acknowledges tenancy.  There are several cases cited to sustain this position.  But upon a critical examination, it will be found that the exception contended for applies in two cases only, to wit:

1. Where the acknowledgment of tenancy is produced through the fraudulent misrepresentations of plaintiff.  Such is the principle of the cases of *Barkin* v. *Seechrist*, 6 Barr. 154; *Jackson* v. *Spear*, 7 Wend. 401; *Jackson* v. *Leek*, 12 Wend. 103; and in *Hall* v. *Benner*, 1 Penn. 409.

2. Where the acknowledgment is made by a sub-tenant of the termor, to such termor, whose term has expired, by mistake, and in ignorance of that fact.  Such are the cases (referred to in appellant's brief) of *Claridge* v. *McKenzie*, 4 Man. & Gran. 142; *Gregory* v. *Doige*, 3 Bing. 474; and *Rodgers* v. *Pitcher*, C. Taunt. 202.

The true rule in all these cases, and the principle out of which it grows, is found in 1 Greenl. Ev. sec. 25, where, after stating the general rule, the author proceeds thus: " Neither is the rule applied in the case of a lease already expired, provided the tenant has either quitted the possession, or submitted to the title of a new landlord; nor is it applied to the case of a tenant who has been ousted, or evicted by title paramount, or who has been drawn into the contract by the fraud or misrepresentation of the lessor, and has, in fact, derived no benefit from the possession of the land." (See also, *Jackson* v. *Ayres*, 14 Johns. 224.)

The Court does not find, as appellant states, that Ford entered

Russ v. Mebius.

"without the consent of Bird." The finding to this effect refers to the lot on which Ford resides, which is not the lot in dispute.

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

This is an action for the possession of a lot in the town of Oroville, and the questions in the case arise upon the evidence and the findings of the Court. It is contended that the evidence did not authorize the findings, and that the latter are insufficient to support the judgment. We do not see any such discrepancy between the evidence and the findings as would justify us in disturbing the judgment on that ground, and we think the findings sufficient to support the judgment. It appears that the lot in question was purchased by the plaintiffs of one Bird, and that the defendant has recognized the title of Bird under such circumstances that he cannot now dispute it.

Judgment affirmed.